In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2011

JULIA EGAN,

*Plaintiff,*

*v.*

DAVID PINEDA,

*Defendant-Appellee.*

APPEAL OF LEWIS G. SPICER,

*Attorney-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 9034 — **Gary S. Feinerman**, *Judge.*

SUBMITTED NOVEMBER 13, 2015 — DECIDED DECEMBER 23, 2015

Before POSNER, RIPPLE, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* The district judge imposed a $5,000 sanction on lawyer Lewis Spicer for misconduct in representing plaintiff Egan in this case, which alleged sex discrim-

ination and the creation of a hostile work environment. The judge imposed the sanction pursuant to the inherent authority of federal judges to sanction attorneys for actions taken "in bad faith." *Chambers v. NASCO Inc.*, 501 U.S. 32, 45–46 (1991); *Johnson v. Cherry*, 422 F.3d 540, 548–49 (7th Cir. 2005). Bad faith can be "recklessly making a frivolous claim," *Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009), which is an accurate description of the conduct for which Spicer was sanctioned. And the claim he advanced on behalf of his client, the plaintiff, was not only frivolous but also damaging to the defendant.

The 75th paragraph of a complaint of more than 100 paragraphs, drafted by Spicer, alleges that Egan "was repeatedly caused to be subjected to unwelcome verbal and physical actions of a sexual nature and was further victimized by acts of sexual assault by the defendants' male employees in her work environment throughout her employment tenure with defendants." The defendants included her employer, Huntington Copper, LLC, and one of its former owners, David Pineda. The paragraph we quoted could thus be understood to be accusing Pineda of having subjected the plaintiff to unwelcome "physical actions of a sexual nature" and of having been responsible for sexual assaults on her by male employees of Huntington. Yet at her deposition Egan emphatically denied having been sexually assaulted (or otherwise subjected to unwanted physical contact) by Huntington personnel during her employment by the firm. When asked why she had alleged such conduct in her complaint she said she hadn't written or even seen the quoted passage or signed the complaint. Spicer concedes that the allegations in the paragraph were false. Pineda filed a motion for sanctions

against Spicer for filing a false, and very damaging, complaint against him.

After dismissing the complaint against Pineda for lack of personal jurisdiction (a dismissal not contested by either Egan or Spicer on appeal), the judge held a hearing at which he asked Spicer to explain how the phony allegation of sexual assault had gotten into the complaint. Spicer said "it was an error," but when asked by the judge "how did that error occur?" he answered only that "it was not supposed to be in there … . It was an oversight on our part … ." The judge was not satisfied. At the next status hearing he asked Spicer "What happened that allowed that allegation, which everybody now agrees was false, how did that allegation make its way into a complaint that you signed and filed?" Again Spicer was unresponsive—and worse. He said "I don't know what to tell you, other than it was an error and an oversight on my part. … [I]t was a simple error in proofreading on my part." How could it have been a "simple" error, let alone a proofreading error? Proofreading means carefully reading a text to find and correct typographical, grammatical, stylistic, and spelling errors. Maybe Spicer meant that someone else had written paragraph 75 and that he (Spicer) in proofreading it had failed to catch the errors. But the errors were not typographical, grammatical, etc.; the paragraph was clearly written; a perfect proofread would not have discovered that the paragraph was asserting a falsehood. Spicer's brief in this court offers no alternative to "oversight" and "proofreading error" as excuses for paragraph 75. Those excuses are pathetic and leave us in the dark about how or why he falsified the complaint.

Moreover, the record contradicts his claim that "when the errant allegation was brought to the attention of Mr. Spicer, he promptly sought to have it withdrawn and stipulated that Paragraph 75 contained incorrect and untrue allegations." The error was discovered during Egan's deposition. That took place in January 2014. Not until July 2014, six months later, did Spicer file a stipulation stating that "Paragraph 75 of the Complaint contains an incorrect and untrue allegation regarding sexual assault."

The district judge's imposition of the $5,000 sanction on attorney Spicer was amply justified.

AFFIRMED